# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JAMARR FOWLER,
    *Plaintiff*,

v.

CITY OF STAMFORD *et al.*,
    *Defendants*.

No. 3:18-cv-01498 (JAM)

## ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Jamarr Fowler was a prisoner in the custody of the Connecticut Department of Correction at the time of the filing of his complaint. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against the City of Stamford and the State of Connecticut's Department of Adult Probation - Court Support Services Division ("CSSD"), as well as four probation officers: Executive Director of Adult Probation Steve Grant, Deputy Executive Director of Adult Probation Gary Roberge, Chief Probation Officer Marvin Parsons, and Chief Probation Officer Lorraine Rodriguez. Doc. #1 at 1–2 (¶¶ 3–9). He seeks damages against Stamford, the CSSD, and the four individual defendants in their individual capacities. *Id.* at 2, 9. For the following reasons, I conclude that the complaint should be dismissed without prejudice.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. On July 30, 2015, Fowler appeared before the Connecticut Superior Court in Stamford and pleaded guilty to forgery in the second degree and interfering with an officer. Doc. #1 at 3 (¶ 10). The court entered a three year suspended prison term, as well as three years of probation. *Ibid.* Fowler had entered into the plea under a stipulation that the probation supervision would be transferred to his home State of New York, which both the

prosecutor and state court accepted. *Ibid.* However, Fowler's probation was never transferred to New York. *Ibid.*

On September 15, 2015, Fowler traveled from New York City to Stamford and met with Probation Officers Parsons and Rodriguez and his attorney, Benjamin Aponte. Doc. #1 at 3 (¶ 11). Fowler notified Parsons and Rodriguez that he was going to record their conversation, and both defendants permitted the recording. *Id.* at 4 (¶ 12). Parsons and Rodriguez then told Fowler that the state court did not have jurisdiction to approve the plea deal as it did, and that he must remain in Connecticut. *Ibid.* At the time, Fowler had a pending criminal case in New York City and had been released on bond. *Ibid.* The terms of his bond release prohibited him from living outside the State of New York. *Ibid.* When he informed Parsons and Rodriguez that he could not remain in Connecticut because of this condition, the officers told him that they "didn't care about him violating the conditions of his bond release" and again demanded that he stay in Connecticut. *Ibid.* (¶ 13).

Fowler then informed Parsons and Rodriguez that he intended to withdraw his prior guilty plea in Connecticut because the terms of his plea agreement were not being met. *Ibid.* (¶ 14). Parsons and Rodriguez immediately threatened to "violate his probation if he even attempted to let the judge know what they said and/or try to [withdraw] his plea." *Id.* at 4–5 (¶ 14). In an attempt to fully understand the officers, Fowler asked, "So let me get this straight. Y'all are gonna violate me for probation for me wanting to exercise my legal right to take my plea back because the terms of my plea agreement [are] not being met," and both officers answered in the affirmative. *Id.* at 5 (¶ 15). The officers' statements were made in the presence of Fowler's counsel and recorded on Fowler's iPhone. *Ibid.*

2

The following morning, September 16, 2015, Fowler called the officers' supervisors, Grant and Roberge, and told them about the threats made regarding his probation, which he had recorded. *Id.* at 5–6 (¶¶ 16–18). When he asked Grant and Roberge for their assistance, the officials said to him, "We don't believe you. Our staff wouldn't do such a thing, [and] there's nothing we can do for you but [to] tell you to file a complaint with the human resource[s] department if you feel that our staff has done something wrong." *Id.* at 6 (¶ 18).

Later that day, Parsons and Rodriguez charged Fowler with violating the terms of his probation. *Id.* at 5 (¶ 16). Fowler was arrested without ever being served with the arrest warrant or any documentation explaining the reasons for the charge. *Id.* 6–7 (¶¶ 19–20).

A violation of probation hearing was held on November 4, 2015, and concluded on November 19, 2015. *Id.* at 7 (¶ 20). Following the hearing, the state court found Fowler guilty of violating his probation and ordered him to serve the three-year suspended sentence in prison. *Ibid.* (¶ 21). Fowler's direct appeal and later habeas challenges to his probation revocation have all been denied. *See State v. Fowler*, 178 Conn. App. 332 (2017) (rejecting claims on direct appeal), *cert. to appeal denied*, 327 Conn. 999 (2018); *Fowler v. Comm'r of Correction*, 2017 WL 3000706, at *1 (Conn. Super. Ct. 2017) (denying state habeas corpus petition); *Fowler v. Semple*, 18cv86 (D. Conn. 2018) (denying federal habeas corpus petition). Fowler has served the sentence and now lives in New York. Doc. #8.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review Fowler's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails

to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." Because Fowler is proceeding *pro se*, the allegations of his complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Fowler contends that Parsons and Rodriguez violated his First, Fourth, Eighth, and Fourteenth Amendment Due Process and Equal Protection rights by threatening to revoke his probation for exercising his right to withdraw his plea, and then carrying out that threat. Doc. #1 at 8 (¶ 22). He is suing Grant and Roberge on the same constitutional grounds for failing to take any corrective action when he notified them about Parsons's and Rodriguez's actions. *Ibid.* (¶ 23). Finally, Fowler is suing the City of Stamford and the CSSD for failing to train and supervise the other defendants. *Id.* at 8–9 (¶ 24).

*Claims against the CSSD*

The CSSD is a state entity that is part of the Connecticut Judicial Branch. A state entity, such as the CSSD, is not a person subject to a suit for money damages under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, I will dismiss Fowler's claim against the CSSD.

*Claims against the City of Stamford*

A municipality may be liable under 42 U.S.C. § 1983 only if the municipality has a policy or custom that causes a deprivation of the plaintiff's constitutional rights. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978)). Fowler has not alleged any misconduct by a City of Stamford employee; all the individual defendants are State of Connecticut employees who happened to have workplaces located in the City of Stamford. Because Fowler has failed to allege any facts to suggest that the City of Stamford has wronged him, I will dismiss Fowler's claims against the City of Stamford.

*Fourth Amendment false arrest and malicious prosecution*

Fowler alleges that the "malicious, discriminatory, retaliatory, arbitrary, [and] capricious conduct" exhibited by defendants violated his Fourth Amendment rights. *See* Doc. #1 at 7–8 (¶¶ 22–23). I construe these allegations to state a Fourth Amendment claim for false arrest and malicious prosecution.

"To state a valid claim for false arrest or malicious prosecution under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claims." *Walker v. Sankhi*, 494 F. App'x 140,

142 (2d Cir. 2012) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010); and *Jaegly v. Couch*, 439 F.3d 149, 151–52 (2d Cir. 2006)). In Connecticut, a plaintiff who alleges a claim for malicious prosecution and false arrest must show both an absence of probable cause and that the underlying charges terminated favorably to the plaintiff. *See Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017); *Miles v. City of Hartford*, 445 F. App'x 379, 382–83 (2d Cir. 2011); *Miller v. Stallworth*, 2018 WL 3974730, at *4 (D. Conn. 2018); *Edelman v. Page*, 2015 WL 1395893, at *11 (D. Conn. 2015), *aff'd sub nom. Edelman v. Schultz*, 683 F. App'x 60 (2d Cir. 2017).

Fowler cannot show an absence of probable cause in light of the very ample evidence of record to show that he violated the terms of his probation. *See State v. Fowler*, 178 Conn. App. 332, 334–342 (2017) (lengthy review of evidence and rejecting challenge to sufficiency of evidence). Nor can Fowler claim that the probation revocation proceeding terminated in his favor. As noted above, all his legal challenges to the revocation of his probation were denied. Because Fowler has not plausibly alleged a lack of probable cause to support his probation revocation or that the probation revocation proceedings have terminated in his favor, I will dismiss Fowler's Fourth Amendment claims for false arrest and malicious prosecution.

### *First Amendment retaliation*

Fowler claims that Parsons and Rodriguez pursued the probation revocation against him as retaliation for his stated wish to withdraw his guilty plea, *see* Doc. #1 at 7–8 (¶ 22), and/or because of his complaint to their supervisors, Grant and Roberge. *Id.* at 5 (¶ 16). I understand these allegations to suggest that Parsons and Rodriguez engaged in retaliation against Fowler because of Fowler's exercise of his First Amendment free speech rights.

The basic requirements for a claim of First Amendment retaliation are that a plaintiff engaged in speech or other conduct protected under the Constitution and that the defendant in turn took adverse action against the plaintiff because of the plaintiff's constitutionally protected speech or activity. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Even assuming that Fowler engaged in protected speech, the Supreme Court has held that a First Amendment claim for retaliatory prosecution may not be maintained unless the plaintiff is able to show an absence of probable cause to support the prosecution. *See Hartman v. Moore*, 547 U.S. 250, 255–56 (2006); *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). Here, as discussed above, Fowler cannot show an absence of probable cause to support the initiation of probation revocation proceedings, and therefore I will dismiss his claim for a retaliatory prosecution in violation of his First Amendment rights.

To the extent that Fowler's retaliatory *prosecution* claim might be re-framed as a retaliatory *arrest* claim, it is likewise subject to dismissal. As of the date in September 2015 when Parsons and Rodriguez allegedly initiated Fowler's arrest and probation revocation proceedings, the law of the Second Circuit made clear that a claim for retaliatory arrest required a plaintiff to show the absence of probable cause to support the arrest. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). To be sure, more recently the validity of that rule has been called into question. *See Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018); *Higginbotham v. Sylvester*, 741 F. App'x 28, 31 (2d Cir. 2018); *see also Nieves v. Bartlett*, No. 17-1174 (U.S. argued Nov. 26, 2018) (pending case before the U.S. Supreme Court posing issue of whether the existence of probable cause defeats a First Amendment retaliatory arrest claim under 42 U.S.C. § 1983). But regardless whether the rule for retaliatory arrests may change in the

future, the individual defendants here are protected by qualified immunity for conduct that did not violate clearly established law at the time of their actions in 2015. *See Simpson v. City of New York*, 793 F.3d 259, 268–69 (2d Cir. 2015) (explaining qualified immunity); *Galarza v. Monti*, 327 F. Supp. 3d 594, 604–05 (S.D.N.Y. 2018) (applying qualified immunity to dismiss First Amendment retaliatory arrest claim).

### *Fourteenth Amendment due process*

Fowler also claims that defendants deprived him of his procedural due process rights "when the plaintiff was illegally arrested, charged with a probation violation & incarcerated he was never personally served or served at all with a copy of the probation motion, warrant or any other documents informing him of the reasons for his arrest & incarceration in accordance with Connecticut Superior Court procedure in criminal matters sec. 43-29 & the due process clause of the fourteenth amendment." *Id.* at 7 (¶ 20). I understand these allegations to suggest a violation of his right to procedural due process.

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: [A court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Because Fowler's arrest undoubtedly involved a deprivation of a liberty interest, I will focus on whether he has alleged that the procedures followed were less than what the Constitution requires.

As an initial matter, to the extent that Fowler complains of a violation of state statutory procedures for service of papers, a violation of a state statutory requirement does not establish that there has also been a violation of the federal Constitution. In any event, the Connecticut

Superior Court has expressly rejected Fowler's claim that his state law rights were violated under the terms of Connecticut Practice Book § 43-29. *See Fowler v. Comm'r of Corr.*, 2017 WL 3000706, at *2 (Conn. Super. 2017) (concluding that § 43-29 is not applicable to probation revocation proceedings initiated by means of an arrest warrant rather than by means of a summons or notice to appear).

Apart from his state law claim, Fowler's constitutional due process claim rests on the notion that the Constitution entitled him at the time of his arrest to a copy of the arrest warrant or other documents explaining the reason for his arrest. But the Supreme Court has ruled that an arrestee is not entitled upon arrest to an immediate notice of the reasons for arrest: "While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004). Accordingly, in the absence of a clearly established constitutional requirement that an arrestee be advised of the reason for his arrest, defendants are entitled at the least to qualified immunity from Fowler's claim that they failed to advise him why he was arrested. *See Knight v. Cerejo*, 2015 WL 893421, at *4 (D. Conn. 2015) (defendants entitled to qualified immunity because "[a]lthough plaintiff complains that he was not told the reason for his arrest, there is no clearly established law that required the police to tell him the grounds for arrest.").

Although *Devenpeck* involved the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment, it is the more specific protections of the Fourth Amendment rather than the generalized protections of the Due Process Clause that properly governs any claims arising from and challenging the validity of Fowler's arrest. *See Graham v. Connor*,

490 U.S. 386, 395 (1989). In any event, even if Fowler's claim is re-framed as an attack on the timing of the notice he received prior to his revocation proceeding, the Supreme Court has ruled that the Due Process Clause requires written notice of a claimed violation of parole, *see Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), but it has not ruled that the notice must be given at the time of a revocation arrest or at any particular point prior to a revocation hearing. *See Butler v. Pa. Bd. of Prob. & Parole*, 2014 WL 1929537, at *3 (E.D. Pa. 2014) (noting that "[t]he Supreme Court requires that a parolee be given notice of the charges against him but does not specify when the notice must be given" and that "[c]ourts since have stated that notice must be given prior to, or, at the time of the hearing"), *aff'd*, 613 F. App'x 119 (3d Cir. 2015) (*per curiam*). Similarly, while the Second Circuit has held that a defendant must receive written notice of the charges against him before his parole is revoked, *United States v. McNeil*, 415 F.3d 273, 276 (2d Cir. 2005), and has suggested in an unpublished decision that this must take place at some point prior to a revocation hearing, *see United States v. Boyle*, 563 F. App'x 24, 25–26 (2d Cir. 2014), it has not squarely held that notice must be provided at any particular time after an arrest or before a hearing. Because there is no clearly established law that required defendants to serve a written notice on Fowler of the reason for his revocation at the time that he was arrested or within a particular time prior to his revocation hearing, defendants are entitled to qualified immunity from Fowler's due process claim.[1]

---

[1] Nor can Fowler show that he suffered any prejudice from any post-arrest delay in notification. The record from his state court revocation proceeding reflects that he had counsel, that the violation of probation warrant was introduced as an exhibit, and that the state court judge granted the request by Fowler's counsel for a continuance of the probation revocation proceeding from November 4, 2015, to November 19, 2015. *See Fowler v. Semple*, 18cv86 (D. Conn.) (Doc. #10-2 at 13–14, 57 and Doc. #10-3 at 12–13).

*Fourteenth Amendment equal protection*

Fowler also claims that defendants deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment. Doc. #1 at 7–9 (¶¶ 21–24). The Equal Protection Clause protects prisoners from wrongful discrimination. The provision does not mandate identical treatment for each individual; rather it requires that the government treat people in similar situations the same way. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To state an Equal Protection claim, Fowler must allege that he was treated differently from other similarly situated individuals, and that the reason for different treatment was intentional discrimination. *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Fowler does not make any of these allegations, and instead merely claims in conclusory terms that defendants' actions were "discriminatory." Doc. #1 at 7 (¶ 21); *see also id.* at 5 (¶ 16) (conclusorily alleging that Parsons and Rodriguez acted "discriminatorily"). Because Fowler has alleged insufficient facts to state a plausible grounds for relief under the Equal Protection Clause, I will dismiss the claim.

*Eighth Amendment*

Fowler finally claims that defendants violated his Eighth Amendment protections against cruel and unusual punishment. Doc. #1 at 7–9 (¶¶ 21–24). "Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685 (1978). But that is not to say that all confinement or imprisonment is cruel and unusual. In order to establish an Eighth Amendment violation, an inmate must show (1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on

the part of the defendant official. *See Gonzalez v. Hasty*, 802 F.3d 212, 224 (2d Cir. 2015). Fowler has alleged that he was imprisoned for three years as a result of his being found guilty of a parole violation. Doc. #1 at 7 (¶ 21). But the only fact he has put forward about that imprisonment is that he was "confined in a cell with another person for 22 hour[s] a day every single day." *Ibid.* Even if those facts did give rise to an objectively serious deprivation of life's necessities, Fowler has not named any defendant responsible for maintaining those conditions who could have had the requisite mental state for an Eighth Amendment violation. Accordingly, he has not stated sufficient facts that, if true, could give rise to a plausible claim for relief under the Eighth Amendment, and I will therefore dismiss the claim.[2]

## CONCLUSION

For the foregoing reasons, Fowler's complaint is DISMISSED without prejudice. If Fowler believes there are additional facts that would cure any of the alleged deficiencies discussed in this ruling, then Fowler may file a motion to reopen along with an amended complaint by **February 13, 2019**. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 14th day of January, 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[2] Because I conclude as to each of Fowler's constitutional claims that Fowler has not alleged plausible grounds for relief and/or claims for which the individual defendants would not have qualified immunity, there is no need for me to consider whether Fowler's claims may be foreclosed by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), that a plaintiff may not seek money damages pursuant to 42 U.S.C. § 1983 if the grounds for relief would necessarily imply the invalidity of a conviction or sentence that has not been reversed or vacated. Nor is there ground for me to consider at this time whether *res judicata* bars any of Fowler's claims.